Okay, Mr. Roth, we've got 14-2205, Edwards v. Cross. Thank you. Good afternoon, Your Honors. Jacob Roth for the appellant, George Edwards. The issue in this federal habeas case is whether when Mr. Edwards was re-released from prison in 2010, whether that was to regular parole or rather back to the special parole term that had previously been revoked. The difference matters because if and only if he was re-released to special parole, then the time he spent on the street, meaning outside of prison, between the 2010 release and the subsequent revocation of the parole all gets forfeited and effectively that time gets added on to the end of his sentence. So this issue actually controls whether Mr. Edwards' sentence will end in early 2017, which is our position, or not until the end of 2021. Where is he now? He's in prison now. Barring a decision from this court, what would be the next step for him? My understanding is that he's scheduled to be re-paroled again next month, and then the government's position presumably will be that that once again is to special parole. And so, if that gets revoked again before 2021, their position would be that that time gets forfeited, the cycle starts again. Did you say next month? Yes. Yes, Your Honor. So he's soon to be out again? Yes, Your Honor. And if he commits some sort of a crime, he's going to be back again, and that goes back to the beginning of the parole? The time that has no longer been served, but it sort of depends on how this case is resolved, because our view is he's been on, he was on regular parole when he was released in 2010, and so the time that he spent on the street counts towards the completion of his sentence, and that sentence is now scheduled to end in 2017. Well, assume we agreed with you that the parole commission lacks authority to reimpose the special parole. Is his special parole automatically converted to regular parole? No. The special parole term, when it's first revoked under the statute, is converted to a term of imprisonment. So the entire period of special parole becomes a term of imprisonment. Then the parole commission, as with any other prisoner, can decide to let him out before the end of the term of imprisonment, but that's just regular parole. I mean, the fundamental difference between regular parole and special parole, regular parole is when you're let out before the end of your term of imprisonment, and special parole is an additional sanction. Once you've done your term of imprisonment, you can be subject to this additional supervision. But at this point, okay, after all of this Kafkaesque stuff, how does that change? What happens to him next? So, the only difference is that if this court holds that he was on regular parole since 2010, in other words, the 2010 release was back to regular parole because the commission could not reimpose the special parole, then all the changes is the final end date of his sentence. So 2010, he was released. He goes back into custody in 2014. He can be required to stay in custody until the completion of his sentence, which is early 2017. If the commission decides to let him out, and my understanding is they have decided to re-parole him again, then he will be out until, subject to regular parole until 2017. Okay. Although special parole couldn't be imposed for wire fraud, he essentially was sentenced to special parole for wire fraud by virtue of the interpretation of 841C, allowing it to be revoked and then reimposed, right, or am I wrong? So the wire fraud, what happened in 2013 is that his supervised release on the wire fraud was violated and he was sent back to prison for violating the terms of the supervised release. The same conduct, according to the commission, violated his parole, whichever type of parole it was, on the original 1985 drug conviction. And so once his term in prison for violating the supervised release ended, which was October 2014, he then begins to serve the remaining time on the drug conviction, related to the drug conviction, which, in their view, results from the re-imposition of special parole. What is the remaining time calculated? Sorry, Your Honor, I didn't hear you. You said on the remaining time. What is the, how is that calculated? I may have misunderstood it. It goes back kind of to the beginning. This is what, sort of a strange thing with the special parole that apparently no longer exists. Right. Well, it only exists for prisoners who were initially sentenced before 1986. Way back. Exactly. He may be the last guy. He may be. But this does make a five-year difference to him. Maybe it would help if I walked through the timeline. Maybe it won't, but I can try. The special parole term started in 2000. February of 2000, he finished his 15-year prison sentence on the drug crime, began a 10-year period of special parole. That was revoked in 2001. They said, you violated your parole. You're going back to prison. And you lose the time that you've spent out since 2000. He then spends some time in prison. Everyone agrees that time counts towards... It counts? The time that he was in prison definitely counts. But then... It reduces to what's left. Exactly. So it went from 10 years to around 9 years. Then he was let out again in 2001. And he was out until 2007, 2008, when the wire fraud happened. So there was about a six-year period there. And that period does not count, regardless of which form of parole he was on, because he committed a new crime. So because he committed the new crime of wire fraud, he forfeits the time that he spent while on parole, whether it was regular parole, which is our view, or special parole, which is the government's view. So that six years didn't count. But then he spent about two years in prison from 2008 to 2010. And that two years counts. So the 10 years went to 9 years, and now it went to about 7 years. So now... Then they let him out again in 2010. So both sides agree he had 7 years left. So the sentence was due to end in early 2017. 2014, October 2014, he's now back in prison for the same conduct that had led to the revocation of supervised release. And the question is whether the time... Yes, yes. And so the question is, does the time from 2010 to 2014 count towards the remaining, the 7 years that were remaining? If it does, then he now continues to be subject to supervision, prison or supervision, until 2017. The government's view is no. That 4 years and 9 months, approximately, was forfeited because he was back on special parole, is their view. And on special parole, you always forfeit the street time if the parole was subsequently revoked. So that's how you get this 4 years and 9 month period that... So why do you say he's getting out next month, when he just did this in 2008? The parole commission has decided to re-parole him. They don't have to do that. That's their decision. But that shouldn't change the calculation of the... They're letting him out? They're letting him out, yes. I mean, you can ask the government. That's my understanding from speaking to my client. Yeah, you'll have your turn, poor soul. So just to be clear, the period of time that's at issue in terms of the, is it forfeited or not forfeited, is January 2010 to October 2014. And if and only if he was on special parole, that time gets added on to the end of the sentence and he won't be done until 2021. How did you find him? Never mind, that's... I actually took over this case from another colleague at the firm, so I'm not sure of the answer to that. If I could quickly address why we believe that he was on regular parole rather than special parole. This court in Evans decided that question and decided that once special parole is revoked, it cannot be reimposed. The government's argument is that the Supreme Court's decision in Johnson, which interpreted the supervised release statute, in effect overruled this court's decision in Evans. The problem with that argument is that there are material differences between the supervised release statute that was at issue in Johnson and the special parole statute that's at issue here and was at issue in Evans. In particular, the Supreme Court in Johnson in adopting what it called an unconventional interpretation of the word revoke, rested substantially on the language of the supervised release statute, which says that the court can revoke a term of supervised release and require the person to serve in prison all or part of the term of supervised release. And the court really honed in on that language and said, because the statute continues to refer to the term of supervised release even after it's been revoked, that necessarily implies that it hasn't gone away. It's just sort of been suspended and when you're let out of prison, it picks up again. It sort of springs back into life. But the special parole statute doesn't say that. It says that when special parole is revoked, the entire term of special parole becomes a term of imprisonment. There's a resulting new term of imprisonment. And you have to serve in prison all or part of the remainder of that new term of imprisonment. So it just turns into a regular term of imprisonment. To the extent that the parole commission decides to re-parole the individual, that's necessarily just to regular parole because, again, regular parole is when you're let out before the end of your term of imprisonment, as opposed to special parole, which is after the term of imprisonment has ended. I see my time has expired. I didn't quite get through all the reasons why. Thank you. Thank you very much. Mr. Burke. Good afternoon, Your Honor. Jerry Burke. I'm an assistant United States attorney in the Southern District of Illinois. Whatever else we might know about Mr. Edwards, he's certainly proven that he's in need of supervision. And that's precisely what the government proposes we continue to do with him. Frankly, Judge, the facts of what happened are very succinctly and properly laid out in Judge Herndon's decision below. As I understand them, Your Honor, Mr. Edwards was first convicted in 1985. That was pre-sentencing guidelines, so that would have been under the parole commission. He was sentenced to 15 years incarceration and 10 years of this special parole terms. He did his 15 years, gets out in 2000. Since 2000, he's frankly been in and out a number of times. When he commits a new offense, goes back in under the parole commission, the way that works, as I understand it, the street time, the time that he was out, is forfeited and doesn't count against his 10 years of special parole terms. But this case illustrates so well the cycle of release and re-imprisonment that we sought to avoid in Athens. If a defendant violates his supervised release under 3553E, the court's free to fashion a shorter period of supervision after the next term of imprisonment. But no such latitude exists under the government's interpretation of 841C, does it? It has to. Well, your honors, as I understand the Johnson decision by the United States Supreme Court, while it doesn't directly overrule Evans, it abrogates the holding of McGee, which is a case that Evans very strongly relied upon. As I understand Johnson, now that dealt with supervised release. It didn't deal with the parole terms. But it basically says that the district court can, in appropriate circumstances, sentence the person to successive terms of supervised release. The statutes under the special parole terms and the supervised release statutes are frankly very, very similar statutes designed to serve very, very similar purposes. So, frankly, based upon the Supreme Court decision in Johnson, it's the government's position that the parole commission properly interprets that they can put this individual back on successive terms of special parole terms. As I started my argument, Mr. Edwards  In footnote 11 of Johnson, the court acknowledges our interpretation in Evans that special parole could not be reimposed once it had been revoked. If the court's analysis of 3583E was intended to apply in that situation as well, why didn't the court say so then? I'm not sure I followed the court's question, but my understanding of the Johnson opinion, and it may well be different than the court's, is that Johnson held that the district court can sentence an individual to successive terms of supervised release. And that the statute that allows the parole commission to let someone out on parole is essentially the same statute designed to serve the same purposes. So if you can do successive terms of supervised release, you can do successive terms of the special parole terms. Earlier, the court indicated what the status of Mr. Edwards, was inquiring as to what the status of Mr. Edwards is. My understanding is that Mr. Edwards is currently incarcerated and with a release date of February 26th of this year. When he is released, if the court adopts the position that I am proposing, he will be on special parole terms until, I believe, 2021. If the court adopts the position proposed by Mr. Roth, I believe he would be on regular parole until 2017, a regular supervised release. That's my understanding of where we are with that issue, Your Honor. All the other points, unless the court has any questions,  Do you need a minute? All right, come on up and have a minute. Thank you, Your Honor, I appreciate it. I would just clarify, I do agree with the statement of the facts in terms of the timing and the different implications of the court's possible decisions. I just wanted to say that the statutes are not the same. The statutes are worded very differently. If the court reads Johnson, the court will see that the language that the Supreme Court in Johnson focused on in the supervised release statute to adopt what it called an unconventional construction does not appear in the special parole statute, and the language in the special parole statute is quite different in that regard. The purposes also are not the same. The Supreme Court in Johnson said, if supervised release cannot be reimposed, then once it's revoked for the first time, there will be no opportunity for any further supervision, which is not what Congress would have wanted. That's not true in the case of parole, because once special parole is revoked, there's no dispute that the prisoner can be re-paroled. Our position is that the re-parole is to regular parole. So there's still an opportunity for further supervision. And so the purpose of reasoning in Johnson, as well as the textual reasoning, simply doesn't apply to the context of special parole. Thank you very much. And you were appointed. Thank you so much. Thank you for taking this case. Thank you for the help you've given us. Thank you, Mr. Burke, for the help you've given us. God knows we need help. So, all right. This case will be taken under advisement. I have to say the magic words. And this court will be in recess until tomorrow. Thank you, Your Honor.